**UNITED STATES of America,**

v.

**Darrell Lee TREADWAY, Warren Colvin Davis.**

**Crim. No. 59–69–NN.**

United States District Court,
E. D. Virginia,
Newport News Division.

Feb. 27, 1970.

308

Roger T. Williams, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

Ben Jacobs, Newport News, Va., for defendant Treadway.

Lacy L. Scoggin, Hampton, Va., for defendant Davis.

## MEMORANDUM ORDER

KELLAM, District Judge.

Defendants move to dismiss the indictment returned herein on July 14, 1969, charging them with a conspiracy to transport or cause to be transported in interstate commerce firearms in excess of the value of $5,000.00, knowing same to have been stolen. The overt acts are alleged to have occurred on or about September 20, 1967, and on October 10 and 11, 1967. The facts relevant to the motion are not in dispute.

Defendants were duly charged in Florence, South Carolina, in the General Sessions Court, with conspiracy to receive stolen goods, knowing them to have been stolen, and with the substantive offenses of buying, receiving and having stolen goods, knowing them to have been stolen. On January 27, 1969, defendant Davis entered a plea of guilty to the offense of receiving stolen goods, was found guilty and sentenced to three years in the penitentiary, and a fine of $500.00. The sentence of imprisonment was suspended and Davis placed on probation for a period of three years. On April 28, 1969, defendant Treadway entered a plea of guilty to the conspiracy charge, and received a like sentence.

Defendants now attempt to interpose said convictions as a bar to their prosecution, asserting that they cannot be twice placed in jeopardy for the same offense by reason of the Fifth Amendment to the Constitution of the United States. The Government asserts that the prohibition of the Fifth Amendment does not prohibit it from prosecuting a violation of its laws where a party has been prosecuted in a state for violating a state law of like import, even if the offenses charged in each instance are the same.

In Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684, in a five to four decision the Court held that an Illinois prosecution for violation of its own penal laws, after a prior acquittal for a federal offense, on substantially the same evidence, did not violate the Due Process Clause of the Fourteenth Amendment. There, Bartkus was indicted, tried and found not guilty in a United States Court for robbery of a federally insured savings and loan association in violation of Title 18 § 2113 U.S.C.A. The following month he was indicted in Illinois. The facts recited in the Illinois indictment "were substantially identical" to those in the earlier federal indictment. It asserted the facts were a violation of an Illinois statute. Bartkus was tried, convicted and sentenced to life imprisonment. The Supreme Court of the United States said that since the new prosecution was by Illinois, "the claim of unconstitutionality must rest upon the Due Process Clause of the Fourteenth Amendment;" that that Court from the beginning and uniformly has held "that the Due Process Clause of the Fourteenth Amendment does not apply to the States any of the provisions of the first eight amendments as such." The Court says that on some seventeen prior occasions it has "repeated the rule that successive state and federal prosecutions are not in violation of the Fifth Amendment." And continuing, the Court said "it

would be disregarding a long, unbroken, unquestioned course of impressive adjudication for the Court now to rule that due process compels such a bar." It said Bartkus had "not been deprived of due process of law by the State of Illinois."

On the same date that *Bartkus* was decided, the Supreme Court also decided the case of Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L. Ed.2d 729, which also was not a unanimous decision. There the petitioners were indicted in Illinois for violating an Illinois statute to conspire to injure or destroy property of another. They entered pleas of guilty and were sentenced to three months imprisonment. Thereafter, they were indicted in the federal court upon charge of a conspiracy to destroy certain described property. The "same acts were the basis of the Illinois conviction." There they raised the same issues raised in the *Bartkus* case. There the Court quoted with approval the following language from an earlier case:

"Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. * * * That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other; consequently, this court has decided, in the case of Fox v. The State of Ohio [5 How. 432], * * * that a State may punish the offence of uttering or passing false coin, as a cheat or fraud practised on its citizens; and, in the case of the United States v. Marigold [9 How. 560],

* * * that Congress, in the proper exercise of its authority, may punish the same act as an offence against the United States." Moore v. People of the State of Illinois, 14 How. 13, at 20.

The Court also quoted with approval the language of Chief Justice Taft in the case of United States v. Lanza, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314, namely:

"We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. * * * Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

"It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each. The Fifth Amendment, like all the other guaranties in the first eight amendments, applies only to proceedings by the federal government, * * * and the double jeopardy therein forbidden is a second prosecution under authority of the federal government after a first trial for the same offense under the same authority." 260 U.S., at 382, 43 S.Ct., at 142.

In *Abbate*, the Court refused to overrule *Lanza* [359 U.S. 195, 79 S.Ct. 666].

From the above it would appear clearly that the motions should be denied. However, on June 23, 1969, the Supreme Court of the United States decided the case of Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, and said, "we today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment." [395 U.S. 794, 89 S.Ct. 2062]. This ruling was contrary to the Court's ruling in Palko v. Connecticut, 302 U.S. 319,

58 S.Ct. 149, 82 L.Ed. 288, which was by *Benton* overruled. The Court said:— [395 U.S. 794, 89 S.Ct. 2062]

*Palko* represented an approach to basic constitutional rights which this Court's recent decisions have rejected. It was cut of the same cloth as Betts v. Brady, 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595] (1942), the case which held that a criminal defendant's right to counsel was to be determined by deciding in each case whether the denial of that right was "shocking to the universal sense of justice." Id., at 462 [62 S.Ct., at 1256]. It relied upon Twining v. New Jersey, 211 U.S. 78 [29 S.Ct. 14, 53 L.Ed. 97] (1908), which held that the right against compulsory self-incrimination was not an element of Fourteenth Amendment due process. *Betts* was overruled by Gideon v. Wainwright, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963); *Twining,* by Malloy v. Hogan, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653] (1964). Our recent cases have thoroughly rejected the *Palko* notion that basic constitutional rights can be denied by the States as long as the totality of the circumstances does not disclose a denial of "fundamental fairness." Once it is decided that a particular Bill of Rights guarantee is "fundamental to the American scheme of justice," Duncan v. Louisiana, *supra,* [391 U.S. 145] at 149 [88 S.Ct. 1444, at 1447, 20 L.Ed.2d 491], *the same constitutional standards apply against both the State and Federal Governments.* *Palko's* roots had thus been cut away years ago. We today only recognize the inevitable. (Italics added)

It seems clear that *Benton* overrules *Bartkus.* But, does it overrule *Abbate*? By logic, it would seem so. What is sauce for the goose ought to be sauce for the gander.

However, at this stage of the proceedings all of the facts are not before the Court. Technically, the conspiracy charged here is not identical to the one charged in South Carolina. Nor does the record show what disposition was made of the conspiracy charge against Davis. The conviction of Davis as shown by the record was for buying, receiving and having stolen goods. The fact that defendants committed two state crimes, or two federal crimes, or one state crime and one federal crime would not prohibit a prosecution for each crime. The question is, whether the exact same acts constitute separate crimes. With the record as it now stands, the motions are denied, with the right of defendants to again raise the issue when the record is complete.